UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHIBIKE NWABUDE, | CASE NO. C24-1574JLR |
| Plaintiff, | ORDER |
| v. | |
| SYNCHRONY BANK / AMAZON, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Defendant Synchrony Bank's ("Synchrony") motion for summary judgment.  (MSJ (Dkt. # 30); Reply (Dkt. # 35).)  *Pro se* Plaintiff Chibike Nwabude opposes the motion.  (Resp. (Dkt. # 33).)  The court has considered the parties' submissions, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS Synchrony's motion for summary judgment.

---

[1] The parties do not request oral argument, and the court concludes that oral argument will not assist it in resolving the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 1

## II.    BACKGROUND

On April 20, 2024, Mr. Nwabude ordered three items from Amazon using his Synchrony Amazon.com branded credit card ("Synchrony Credit Card Account") for a total of $47.15.  (Am. Compl. (Dkt. # 14) ¶ 1.)  Mr. Nwabude returned all three items to Amazon on April 26, 2024.  (*Id*.; *see id*., Ex. A (UPS Receipt); *id*., Exs. B1, B2, B3 (Refund Confirmation Emails); *id*., Ex. B4 (Return Order Details).)  Mr. Nwabude received the refunds as in-store credit via electronic gift cards added to his Amazon.com shopping platform account ("Amazon.com Shopping Account").  (*See* Refund Confirmation Emails (stating that the refund for all three items was "available now in [Mr. Nwabude's] Amazon Account.").)

That same day, Mr. Nwabude also received by email his monthly statement for his Synchrony Credit Card Account stating that the $47.15 balance was due on May 18, 2024.  (*Id*. ¶ 2; *see id*., Exs. C,  C1 (4/26/24 Monthly Statement).)  On May 13, 2024, Mr. Nwabude received a second email notification regarding his balance of $47.15 due on May 18, 2024.  (*Id*. ¶ 4; *see id*., Ex. D (5/13/24 Statement Notification Email).)  On May 16, 2024, Mr. Nwabude called Synchrony customer service and asserted that he did not owe the statement balance because he returned the items and Amazon provided a refund. (*Id*. ¶ 3.)  Synchrony's customer service manager stated that she would look into the issue.  (*Id*. ¶ 4.)

On May 27, 2024, Mr. Nwabude received another email notification regarding his Synchrony Credit Card Account balance, which was now $89.20 and due June 18, 2024. (*Id*. ¶ 5; *see id*., Exs. E, E1 (5/27/24 Statement Notification Email and Monthly

Statement).)  Mr. Nwabude replied to both email notifications on June 2, 2024, stating that: (1) the items had been returned and refunded by Amazon; and (2) that he had informed Synchrony customer service on May 16, 2024, that he did not owe the balance and late fees.  (*See* 5/13/24 Statement Notification Email; *see also* 5/27/24 Statement Notification Email and Monthly Statement.)

On June 5, 2024, Mr. Nwabude spoke with an Amazon customer service representative who confirmed via email that the refunds for the items were "processed on [Mr. Nwabude's] Amazon gift card balance on April 26."  (Am. Compl. ¶ 8; *id*., Ex. F (Amazon Refund Confirmation).)

Between June 17, 2024, and September 26, 2024, Synchrony continued to send Mr. Nwabude emails regarding his past due balance.  (*Id.* ¶ 9; *see id.*, Exs. G1-G26 (Past Due Balance Emails).)  In June and July 2024, Mr. Nwabude replied to these emails, stating that he did not owe Synchrony because he returned the Amazon items and that Synchrony "is messing up [his] credit records."  (*Id*. ¶ 9; *see id*., Ex. G1-G8.)  Mr. Nwabude did not make payments on his Synchrony Credit Card Account balance, leading Synchrony to add late fees and interest in May, June, and July 2024.  (*Id*. ¶¶ 12, 14; Avila Martinez Decl. (Dkt. # 32) ¶ 7, Ex. D (July 2024 Synchrony Account Statement, showing a balance of $163.30).)

Synchrony reported the delinquencies on Mr. Nwabude's Synchrony Credit Card Account to the appropriate credit reporting agencies ("CRAs").  (*Id.* ¶ 17; Avila Martinez Decl. ¶ 8.)  Subsequently, Mr. Nwabude filed disputes with the CRAs (*see* Am. Compl. ¶ 17; *id.*, Exs. K (Equifax Dispute Results), K1 (Experian Dispute Results), K2

ORDER - 3

(TransUnion Dispute Results)), which sent Automated Credit Dispute Verifications ("ACDVs") to Synchrony (Avila Martinez Decl. ¶¶ 9-10, Exs. E (Equifax ACDV), F (TransUnion ACDV), G (Experian ACDV)).  Synchrony reviewed its records and timely verified its reporting to the CRAs in August 2024.  (Avila Martinez Decl. ¶¶ 11-12.)  Synchrony applied provisional credits for the balance owed on Mr. Nwabude's Synchrony Credit Card Account, including late fees and interest, while it investigated his claims.  (*Id.* ¶ 13, Ex. H.)  In fact, Synchrony over-credited Mr. Nwabude's account, resulting in a positive balance of $41.51.  (*Id.*)

During its investigation, Synchrony requested information from Amazon regarding the refunds it issued on Mr. Nwabude's returns.  (*Id.* ¶ 14.)  Amazon informed Synchrony that Mr. Nwabude had asked Amazon to credit the refunds as e-gift cards posted to his Amazon.com Shopping Account.  (*Id.*; *see also id.* ¶ 15, Exs. I-K (Amazon Dispute Recourse Documents, noting that Mr. Nwavude had "completely used" the gift card balances on other orders).)

Although Synchrony concluded that the three charges were valid, it reinstated only one of the charges.  (*Id.* ¶ 17.)  As a result, Mr. Nwabude's account continued to have a positive balance.  (*Id.*, Ex. L (September and October 2024 Statements).)  According to Synchrony's records, the adjustments it made during its investigation removed any delinquencies in its credit reporting of Mr. Nwabude's Synchrony Credit Card Account. (*Id.* ¶¶ 17-18.)  As a result, the credit reporting no longer shows that the account was past due in June or July 2024.  (*Id.* ¶ 18; *see* Am. Compl. ¶ 27 (acknowledging that Synchrony resolved the credit dispute).)  Nevertheless, Mr. Nwabude alleges that the delinquencies

ORDER - 4

reported in June and July 2024 damaged his credit records.  (Am. Compl. ¶ 27; *see id*., Exs. Y (stating that Costco revised Mr. Nwabude's credit limit as a result of its review of Mr. Nwabude's account and credit information), Y1 (stating that Upgrade reduced Mr. Nwabude's credit limit based on changes to his credit profile and account history), Y2 (stating that Wells Fargo lowered Mr. Nwabude's credit limit based on late payments, the amount owed being too high relative to his credit limit, and the amount owed being near or at the credit limit on one or more actively-used cards).)

On July 19, 2024, Mr. Nwabude filed his original complaint in the Snohomish County District Court Small Claims Department.  (Compl. (Dkt. # 1-2) at 13-60.) Synchrony timely removed the case to this court on October 1, 2024.  (NOR (Dkt. # 1) at 1, 3.)  On October 24, 2024, the court court granted Synchrony's motion for a more definite statement, and Mr. Nwabude filed an amended complaint pursuant to that order on November 5, 2024.  (10/24/24 Order (Dkt. # 13); Am. Compl.)  Mr. Nwabude alleges that Synchrony's actions violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*.  (*See generally* Am. Compl.)  Synchrony filed the instant motion for summary judgment on January 27, 2026.  (*See* MSJ.)  Synchrony's motion is now fully briefed and ripe for decision.

### III.    ANALYSIS

The court first addresses the legal standard for awarding summary judgment and then considers Synchrony's motion.

//

//

ORDER - 5

**A.    Legal Standard**

Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the movant seeks summary judgment on a claim or defense on which the nonmovant bears the burden of persuasion at trial, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id*. at 1103. If the nonmoving party does not produce evidence to

//

ORDER - 6

show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323.

"The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*, 750 F.3d at 1049-50 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.    The Court Grants Synchrony's Motion for Summary Judgment.**

Congress enacted the FCRA "to ensure accurate reporting about the 'credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.'" *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1250-51 (9th Cir. 2022) (quoting 15 U.S.C. § 1681(a)(2)). The FCRA regulates how entities that "furnish" information about a consumer's debt must respond to a notice of dispute sent by a CRA. *Id.* at 1251. "Among other things, the furnisher must correct or delete inaccurate information after conducting an 'investigation with respect to the disputed information.'" *Id.* (quoting 15 U.S.C. § 1681s-2(b)). The investigation must be "at least 'reasonable' and 'non-cursory.'" *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)). "A consumer may sue a furnisher and recover damages if the furnisher willfully or negligently violated FCRA." *Id.* (citing 15 U.S.C. §§ 1681n, 1681o).

ORDER - 7

To survive summary judgment, Mr. Nwabude must make a *prima facie* showing that Synchrony furnished inaccurate information to a CRA and failed to reasonably investigate the inaccuracy after receiving notice from the CRA about his dispute. *See Gross*, 33 F.4th at 1251. "If there is no inaccuracy, then the reasonableness of the investigation is not in play." *Id.* If Mr. Nwabude makes this showing, he must also demonstrate that there is a triable issue of damages, whether through actual harm or in the form of statutory damages, which are available for willful violations. *Id.* at 1253.

Synchrony contends that it is entitled to summary judgment on Mr. Nwabude's FCRA claim because: (1) its reporting of Mr. Nwabude's credit information was accurate; (2) it conducted a reasonable investigation upon receiving the ACDVs regarding Mr. Nwabude's credit dispute; and (3) Mr. Nwabude cannot prove actual damages or willfulness as a result of Synchrony's alleged negligent violation of the FCRA. (MSJ at 8-17.) The court agrees with Synchrony that Mr. Nwabude cannot show that the information it reported to the CRAs was inaccurate.

"[A]n item on a credit report can be incomplete or inaccurate . . . because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (internal quotation marks and citations omitted). It is undisputed that Mr. Nwabude purchased three items from Amazon.com using his Synchrony Credit Card Account for a total of $47.15, and that he returned the items on April 26, 2024. (Am. Compl. ¶ 1; MSJ at 2.) Mr. Nwabude's own evidence demonstrates that Amazon refunded the items in the form of e-gift cards added to his

ORDER - 8

Amazon.com Shopping Account, rather than to his Synchrony Credit Card Account. (*See* Refund Confirmation Emails; Amazon Refund Confirmation; *see also* Amazon Dispute Recourse Documents.)  Mr. Nwabude does not address this evidence in his opposition brief.  (*See generally* Resp. (making no mention of his choice to receive the refunds to his Amazon.com Shopping Account and subsequently spend them on other purchases).)  Because Mr. Nwabude chose to receive the refunds for the three items through e-gift cards rather than as a credit to his Synchrony Credit Card Account, he still owed Synchrony for the original purchases.  (*See* MSJ at 8-11 (so arguing).)  Mr. Nwabude, however, refused to pay the outstanding balance to Synchrony.  (*Id*.)  As a result, Synchrony applied late fees and interest to his balance in May, June, and July 2024, and furnished this information to the CRAs.  (Am. Compl. ¶¶ 12, 14; July 2024 Synchrony Account Statement; *see also* Avila Martinez Decl. ¶¶ 6-8.)

Accordingly, the court concludes that Synchrony has shown as a matter of law that the information it provided to the CRAs was accurate.  As a result, the court need not address the reasonableness of Synchrony's investigation.  *See Gross*, 33 F.4th at 1251.  Thus, the court grants Synchrony's motion for summary judgment and dismisses Mr. Nwabude's FCRA claim with prejudice.

//

//

//

//

//

ORDER - 9

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Synchrony's motion for summary judgment as to Mr. Nwabude's FCRA claim (Dkt. # 30).  This claim, and this action, are DISMISSED with prejudice.

Dated this 13th day of March, 2026.

_____
JAMES L. ROBART
United States District Judge

ORDER - 10